# Black *v.* Pittsburg & Butler Street Railway Company, Appellant.

*Deed—Streets—Highways—Plan of lots—Vacation of street—Road law —Injunction—Equity.*

Where an owner of land lays out lots and streets thereon, and one of the streets is placed on the municipal plan as a public highway and thereafter the street is vacated by the public authorities, the original owner of the land cannot as against the grantees of his lots or their successors in title, claim absolute ownership in the bed of the street vacated, and exclude the lot owners from its use.

A sale of lots according to a plan which shows them to be on a street implies a grant or covenant to the purchaser that the street shall be forever open to the use of the public and operates as dedication of it to public use.

Argued May 15, 1907. Appeal, No. 221, April T., 1907, by defendant, from decree of C. P. Butler Co., Equity Docket No. 2, Sept. T., 1906, on bill in equity in case of E. A. Black et al. v. Pittsburg & Butler Street Railway Company. Before RICE, P. J., HENDERSON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Bill in equity for an injunction.

GALBREATH, P. J., filed the following opinion:

### FINDINGS OF FACT.

1. About the year 1872 Moses Sullivan and Walter L. Graham were the owners of a tract of land in the borough of Butler county, Pennsylvania, containing about four acres, being the four acres described in plaintiffs' bill, which they laid out into lots according to a plan which provided for streets and alleys, among which were West street on the south, Shore street on the east and north. Between these two streets was an alley, the one in controversy, which extended east and west parallel with West street. These streets and alleys were dedicated to public use or for the use of all persons who might choose to travel thereon, and the alley in question has been so used ever since until the doing of the things complained of in plaintiffs' bill.

2. Sullivan and Graham sold various lots in this plan and made conveyances bounded by and with reference to said streets and alleys and according to their plot, including the conveyances for the lots now owned by the several plaintiffs and by the defendant company.

3. The dates of the deeds for the several lots now owned by the respective plaintiffs and defendant are as follows, viz. :

These being the dates of the original deeds made by Moses Sullivan and Walter L. Graham to the original purchasers of the several lots, through whom the plaintiffs and defendant company respectively claim.

4. These lots, some of which fronted north on Shore street and the others of which fronted south on West street, all extend to said alley in the rear.

5. Lots Nos. 4 and 5, owned by defendant company, are on the north side of said alley, adjoining each other, and

together abut on said alley in the rear a distance of 124 feet. Lots Nos. 11 and 12, owned by defendant company, are on the south side of said alley, directly opposite lots Nos. 4 and 5, on the north side, and abut on said alley in the rear a distance of 124 feet.

6. For more than twenty-one years the town council of the borough of Butler, through its street commissioner and workmen, has worked upon and repaired West and Shore streets, and on one occasion between the years 1900 and 1905, the precise date of which does not appear, leveled up the alley in question after it had been washed out by a flood. About the year 1890 George C. Pillow, a surveyor, was employed by the town council of Butler borough to make a survey and draft of the street system of Butler, which he did, including the street and alleys shown by the Sullivan and Graham plan of lots, which draft was accepted and used by the town council.

7. The Pittsburg & Butler Street Railway Company, defendant, is constructing an electric railway to extend from the city of Pittsburg to the borough of Butler, a distance of more than thirty miles, and purchased the lots in question for the purpose of erecting car barns thereon. The said lots cannot be advantageously used for that purpose while separated by said alley. The defendant company on that account made arrangement with the town council of the borough of Butler to have said alley vacated for the distance that their said lots abutted thereon. At or about the same time the defendant company agreed with the town council aforesaid to open up a street along the east side of their said lots, from West street on the south to Shore street on the north, along the route of their railway, said street to be thirty feet wide, to be paved by defendant company and to be for the use of the public, subject to the exclusive right of defendant company to use the same for street railway purposes. This street, when opened, will cross over and occupy thirty feet of that portion of said alley lying between defendant's lots.

8. On May 1, 1906, an ordinance was duly enacted by the town council of the borough of Butler vacating that portion of said alley between lots Nos. 4 and 5 on the south, and Nos. 11 and 12 on the north, owned by the defendant company. Pursuant to said ordinance the defendant company closed the por-

tion of said alley so vacated, with the purpose in view of using the same in connection with and as part of its said lots of ground for the purposes of erecting its car barns and shops thereon.

9. The erection of the proposed car barns and shops will cost defendant company about $40,000, and their erection at or near the borough of Butler, which is the terminus of its line, and all under one roof, is necessary in order to the convenient operation of defendant company's road.

### DISCUSSION.

There is but one question involved in this case, viz.: Did the vacated portion of the alley in question revert to the defendant company, it being the abutting owner, in such manner as to permit the defendant company to close it up and use it for its own purposes, and so prevent the use of it as an open way appurtenant to the properties owned by plaintiffs?

On part of the defendant it is contended that its purchase of the lots on either side of the alley and abutting thereon carried with it title in fee to the center of the alley, and that on vacation of the alley by the municipal authorities the possession of the alley fell to it. It is the undoubted rule that when a public street or highway is called for as a boundary or monument in a deed, it is used as an entirety to the center of it, and to that extent the fee passes. The conveyance carries with it the fee to the center of the highway: Paul v. Carver, 26 Pa. 223.

And this rule, we have no doubt, applies equally to a conveyance bounded by a public alley. But this ownership in fee is not inconsistent with an outstanding right in others or in the public to use the surface for the purpose of public travel. In other words, the title so conveyed is no less a fee by reason of the use of the highway over the surface of the land. A title in fee, therefore, in the purchaser of the land may exist concurrently with an outstanding right in another or in the public, or both, to have the way over the land kept open for travel. And this is especially true when an owner of land has divided it up into lots according to a plan, with streets and alleys, and has sold lots according to such plan by reference thereto in the deeds of conveyance. In such case there

is, on the one hand, a covenant right in each purchaser to have said streets and alleys kept open as appurtenant to his land, and this right can be asserted by him or those claiming under him against all interference therewith. The right so vesting in him is his as much as the land purchased by him to which it is appurtenant. But the plotting of the land by the owner also operates as a dedication of the streets and alleys shown on the plot to public use. Such dedication does not of itself, however, impose on the public authorities any duty of control or maintenance. To have this effect there must have been some unequivocal act of acceptance on part of the municipal authorities or such long continued use by the public and of such character as would raise a prescriptive right in the public. But even this latter may be doubted since the Act of May 9, 1889, P. L. 173. However this may be, it remains true that the private right of each purchaser to have said streets and alleys kept open may be asserted by him independently of the public right. The private right is unaffected by municipal acceptance or assumption of municipal control, and exists wholly independent of such acceptance or control. This follows from many authorities, among which the following may be cited: The sale of lots according to a plan which shows them to be on a street implies a grant or covenant to the purchaser that the street shall be forever open to the use of the public, and operates as a dedication of them to the public use. The right passing to the purchaser is not the mere right that he may use the street, but that all persons may use it: Quicksall v. Philadelphia, 177 Pa. 301.

When a map or plan is thus referred to, it becomes a material and essential part of the conveyance, and is to have the same force and effect as if copied into the deed: Higgins v. Sharon Boro., 5 Pa. Superior Ct. 92.

" If it be a street laid out by the grantor himself over land which he sells in lots, there is necessarily an implied covenant that he will open it at least for the use of the grantees. . . . It is a well known legal principle that a description referring to a street laid out or to be laid out by the grantor ordinarily operates as an equitable grant of the right of way and binds privies in title with notice: " Twibill v. Railway Co., 3 Superior Ct. 487.

It was also held in that case that it was not necessary, in order to preserve the rights of the holders of title under the original owner who plotted the ground, that the street or way should be accepted by the city. That it was a way, lawfully created by the original owner of the land and of such character that every abutting lot owner could insist, as a matter pertaining to his own right, that it may be used by the public if they see fit to travel it.

In Weaver v. Getz, 16 Pa. Superior Ct. 418, it was held that, "A person who acquires title by deed to an easement appurtenant to land has the same right of property therein as he has in the land."

Where lots are sold according to a plan, "the right of a grantee and those who claim under him to have a street upon which his deed calls for a frontage kept open as a way appurtenant to his land is, as against his grantor, entirely distinct from and independent of the right of citizens generally to use the public highways of a municipality:" Carroll v. Asbury, 28 Pa. Superior Ct. 354.

From these and kindred authorities which might be cited to the same effect, we think it results conclusively that the private right which each individual lot owner, under deed from Sullivan and Graham, acquired by virtue of the conveyance to him according to the plot or plan, to have the streets and alleys shown by said plot kept open for the use of himself and all others, is a distinct entity, an individual right, which he might at all times assert, whether or not the streets and alleys were ever accepted as such by the municipality, and that this private right was not lost by or merged into a subsequent acceptance of the said streets and alleys by the municipality. If this conclusion be correct, the question still remains whether or not the private right survived the action of the town council in vacating the portion of the alley in question. If the determination of this question rested on reason alone, it might be answered that inasmuch as the private right does not rest on or grow out of the acceptance of the alley by the municipality, but existed prior thereto, its continued existence would not be affected by or dependent on the continued control of the municipality. But we think the answer to this question no longer rests on reason alone, but on authority as well.

In the case of Wickham v. Twaddell, 25 Pa. Superior Ct. 188, where the question was as to the right of the plaintiff, who was the owner of a lot purchased under a plot or plan of lots, to have one of the streets shown on such plan kept free from obstructions by another lot owner under the same plan and from the same original owner, the court held that "neither the grantors nor those who through them subsequently acquired title to other portions of the tract could subsequently make changes which would deprive Wickham (the plaintiff) of the right which he had acquired to use as public highways the streets located upon the plan. . . . . Such an owner when the street has been laid out or established by his grantor is a purchaser by implied covenant of the right that the street shall remain open, and the vacation of the street by the municipal authorities will not divest his right to have the space left open as a street. This conveyed right of way as appurtenant to the land is wholly distinct from the public right of passage."

In the brief submitted by counsel for the defendant it is contended, however, that as the question of the vacation of the street in the case just cited was not involved, what was said as to the effect of the vacation of such a street by municipal authority was mere dictum. However that may be, what counsel contends was dictum in that case was quoted and applied in the case of Carroll v. Asbury, 28 Pa. Superior Ct. 354. In that case Carroll, the plaintiff, purchased from Asbury a lot in a plan of lots laid out by Asbury, which fronted on a street which appeared on and as part of said plan, known as Lakeside avenue, in the city of Philadelphia. The city authorities of Philadelphia, by ordinance, adopted and confirmed the plan, with said avenue as laid out by Asbury. The same authorities, by a subsequent ordinance, revised and changed the line of certain streets on said plan, and in so doing omitted and vacated, as a public highway, that part of Lakeside avenue as located by the Asbury plan, from a point at the southeast corner of Carroll's property to the eastern terminus of said avenue. This left the avenue still open in front of Carroll's property and thence westward to its westward terminus. The property on both sides of the portion of said avenue which had been vacated by said ordinance belonged to Asbury and another, who thereupon asserted an absolute ownership of the land cov-

ered by the vacated portion of the street, and were about to build a fence or plant a hedge across it, when Carroll filed a bill to restrain them. In disposing of the case, the court says: "The public might reject or accept, or having accepted, might renounce the public right involved in the transaction, but the action of the public could not change the private rights of the parties created by their contract, as between themselves and those holding under them."

The principle there decided was the same as that involved in the case under consideration, and that case, we are convinced, rules this one. It was also there held that as the plaintiffs' right was clear, their remedy was by injunction.

It has been urged, however, by defendant's counsel that inasmuch as the defendant is constructing an electric railway at great expense, extending from Butler to the city of Pittsburg, more than thirty miles, through a thriving community and a number of towns and villages, thus conferring a great public benefit, and as the construction and maintenance of the car barns and shops in question will afford employment for a large number of men, and as the injury to the plaintiffs resulting from the vacation and defendant's occupancy of the disputed portion of the alley would be comparatively small, whilst the inconvenience and disadvantage resulting to the defendant company, if not allowed to occupy the alley, would be great, the question at issue should be determined in its favor in accordance with the doctrine of "the balancing of injuries." No authority has been cited, however, in support of this proposition. It may well be conceded that the construction of defendant's railway is a matter of public concern, and will bring benefits to many people in many ways, and that the value of the right of the plaintiffs to have said alley kept open is comparatively small, yet whatever the right is worth it is theirs, and to take it away from them without their consent and without compensation, however small its value, would be a price too large to pay, even for a project from which many benefits are likely to accrue to the community, as well as advantage to its owners.

We conclude, therefore, as matters of law :

1. The vacation of the alley in question, while it divested said alley of its public character, to the extent of relieving the

424  BLACK *v.* PITTSBURG & BUTLER RY. CO., Appellant.

Opinion of Court below—Opinion of the Court. [34 Pa. Superior Ct.

borough from its maintenance and control, yet such revocation did not take away the private right of the plaintiffs to have it kept open for their use and the use of all others who may desire to travel on it.

2. The vacation of said alley by the municipal authorities did not operate to vest title in the defendant conpany in such manner as to deprive plaintiffs of their right to have it kept open for public travel.

3. The defendant company's occupancy of said alley for the purpose of placing buildings upon it is an encroachment on the right of the plaintiffs.

4. The right of the plaintiffs being clear, equity has jurisdiction to enjoin the defendant company, and an injunction is therefore directed to issue as prayed for October 19, 1906.

*Error assigned* was decree awarding an injunction.

*Joseph B. Bredin*, with him *W. H. Lusk*, for appellant.

*T. C. Campbell*, for appellees.

PER CURIAM, October 7, 1907:

It is settled by numerous decisions " that a sale of lots according to a plan which shows them to be on a street implies a grant or covenant to the purchaser that the street shall be forever open to the use of the public and operates as a dedication of it to public use." One of the latest decisions of the Supreme Court, in which the rule as above stated has been enunciated, is Garvey v. Refractories Company, 213 Pa. 177. The question involved in this appeal is whether this right of the grantee and those who claim under him, arising out of the implied covenant of his deed running with the land to have the street kept open as a way appurtenant to his land, is extinguished by the municipality's acceptance of the dedication or by such acceptance followed by vacation of the street by due process of law. This question was considered by this court in Wickham v. Twaddell, 25 Pa. Superior Ct. 188, and again in Carroll v. Asbury, 28 Pa. Superior Ct. 354. In the former case there was no vacation, but the facts required a determination of the nature of the right acquired by the purchaser under his deed. Therefore,

we cannot agree with appellant's counsel that what was said as to the effect of a vacation was obiter dictum. But, be that as it may, the precise question arose in Carroll v. Asbury, and was decided in the negative upon full consideration of the principles involved and of the pertinent authorities. The learned judge below was clearly right in following that decision and, therefore, in holding that the plaintiffs, whose lots abut on the alley, were entitled to have it kept open as a way appurtenant to their lands. The plaintiffs' right being clear, it is not a case for balancing the loss to the defendant or the public which may result from the defendant being restrained from building on that portion of the alley upon which its land abuts against the injury which would result to the plaintiffs from the deprivation of their right. For further discussion of the question and for a citation of pertinent authorities, we refer to the opinions of our Brother PORTER in the cases above cited, and to the opinion of the learned judge below in the present case.

The assignments of error are overruled and the decree is affirmed, at the costs of the appellant.