Elizabeth Knoth, Appellant, *v.* Manhattan Railway Company, Respondent.

1. Injunction — Denial upon Ground of Great Public or Private Mischief — Time of Application Affects Character of Relief. A court of equity is not bound to issue an injunction where it will produce a great public or private mischief, merely for the purpose of protecting a technical or unsubstantial right; the time of the application therefor will also be considered, and affects largely the character of the relief which will be granted.

2. Elevated Railroad — Denial of Mandatory Injunction Compelling Removal of Track. In an action commenced in 1902 by an abutting owner against an elevated railway company for a mandatory injunction compelling it to remove a track erected without legislative authority or municipal consent over and above the center of Ninth avenue in the city of New York, between two other tracks previously erected and operated by the defendant and its predecessors, in which the plaintiff asserted his absolute right to the removal of the track, it appeared that the defendant, in good faith and relying upon certain acts of the legislature thereafter held invalid, had in 1894 constructed the track; that the plaintiff had knowledge that it was being constructed, and ever since has been familiar with its use and effect; that the third track is a great public utility and benefit; that the injury suffered by the plaintiff, if any, is small compared with the injury and inconvenience to the defendant and public if the defendant is compelled to remove the same; that its removal would seriously impair the train service and increase the danger of operation; that the payment to the plaintiff of just compensation would be a remedy as adequate as would be the removal of the track. *Held*, that the trial court, in the exercise of its discretion, properly denied a mandatory injunction; that the award of a money judgment conditioned upon the conveyance by plaintiff to the defendant of the easements appropriated for the use of the track was proper; that although the defendant is in no situation to institute condemnation proceedings to acquire property rights, it may be regarded as a corporation acting in good faith and serving the public for a long series of years without interference, and hence is justified in acquiring easements by entering into contracts with abutting owners; that plaintiff having resorted to a court of equity must abide by the result or bring an action for damages in a court of law.

*Knoth* v. *Manhattan Ry.' Co.*, 109 App. Div. 802, affirmed.

(Argued December 20, 1906; decided January 15, 1907.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered Jan-

nary 4, 1906, which affirmed a judgment of Special Term granting an injunction against the maintenance and operation of the center track of defendant's railway or in the alternative that the defendant should pay a certain sum for a conveyance of the easements appropriated.

The trial court made thirty-five findings of fact; those material on this appeal are as follows: II. The defendant erected in the year 1894, without legislative authority and without municipal consent, and has since maintained and operated without such authority or consent, a center or third elevated railway track over and above Ninth avenue in the city of New York in front of plaintiff's premises and between two other elevated railway tracks previously erected, operated and maintained by the defendant and its predecessor, The New York Elevated Railroad Company. VIII. The plaintiff in 1889 purchased the property described in the complaint and known as 461 Ninth avenue, between 35th and 36th streets, and is and has been since that date the owner thereof in fee and in possession of said premises. IX. The said center or third track has been operated by the said defendant since the year 1894 by the running of express trains carrying passengers thereon, and the said track and the structure supporting it are permanent and the defendant intends indefinitely to continue the operation of trains thereon. XI. The express trains regularly operated on said track stop at no station within a mile of the plaintiff's premises. XII. The said center or third track, the additional structure supporting it and the trains operated thereon confer no benefit upon the plaintiff or upon her premises. XV. The erection and operation of the center or third track have involved a further taking of the plaintiff's easements. XX. The construction, operation and maintenance of said center or third track in front of the plaintiff's premises causes a substantial depreciation in the fee value thereof, to the extent of $1,200. XXII. Among the rights, privileges and franchises granted to The New York Elevated Railroad Company, was the right to make and adopt such alterations and improvements in the structure, rolling

stock, motor power and its application, and in the position, grade, elevation and depression of the tracks, and the mode of securing and strengthening its railroads, sideways, crossings, stations and turnouts as might be authorized and approved by commissioners appointed pursuant to chapter 489 of the Laws of 1867, and the acts amendatory thereof and supplemental thereto.    XXIII. On November 10, 1877, the commissioners of The New York Elevated Railroad Company duly approved a plan of proposed additional track of The New York Elevated Railroad Company, which plan provided for four tracks in front of plaintiff's premises, one of which tracks was a switch, crossover or connecting track, and three of said tracks were actually constructed and used prior to the year 1880.    XXV. In or about the month of July, 1894, a switch, siding or third track was constructed over the portion of Ninth avenue in front of the premises in suit in addition to the structure as it existed prior thereto, the construction of which switch, siding or track had been, in the month of December, 1893, duly authorized by said commissioners in so far as they had power so to do and was constructed under color of such authority.    XXVII. Since the decision by the Hon. GEORGE L. INGRAHAM of the Supreme Court in the case of *Mayor, etc., of City of New York* v. *The Manhattan Railway Company*, hereinbefore referred to, the defendant has spent over $800,000 in acquiring the easements of abutting owners along the line of said third track, turnout or siding, and has procured the consent of the owners of property representing 26,927 lineal feet along Ninth and Columbus avenues out of a total of 39,514 feet.    XXVIII. Said switch, siding or turnout is of great public utility, and constitutes a great public benefit.    XXIX. The injury, if any, suffered by the plaintiff from the maintenance and operation of said switch, turnout, siding or third track, is small compared with the injury and inconvenience which would result to the defendant and to the public if the defendant should be compelled to discontinue the use and remove the same.    XXXI. If the switch, siding, turnout or so-called "third track" in front of plaintiff's premises

should be removed, the defendant's train service would thereby be seriously impaired. XXXIII. If the switch, siding, turnout, or so-called "third track" in front of plaintiff's premises should be removed, the danger incident to the operation of trains on defendant's railway would thereby be increased. XXXIV. For any and all damages suffered by the plaintiff by reason of the construction, maintenance and operation of the so-called switch, siding or third track in front of the premises described in the complaint, the plaintiff can be adequately compensated by the payment of such sum of money as shall be found by the court to be the amount of the damages so suffered. XXXV. The payment to the plaintiff of just compensation would be a remedy for her injuries as adequate as would be the removal of the switch, siding, turnout, or so-called "third track" in front of her premises.

The conclusions of law based upon these findings of fact are the usual ones in the ordinary elevated railroad case.

*J. Aspinwall Hodge* for appellant. While a temporary injunction involves discretion, the granting or refusal of a permanent injunction does not, where the facts conclusively show the equities. (*McClure* v. *Leaycraft*, 183 N. Y. 36; *Kitching* v. *Brown*, 180 N. Y. 414; *Wakeman* v. *Wilbur*, 147 N. Y. 657; *Story* v. *El. R. R. Co.*, 90 N. Y. 122; *Williams* v. *N. Y. C. R. R. Co.*, 16 N. Y. 97; *Paige* v. *S. R. R. Co.*, 178 N. Y. 102; *Campbell* v. *Seaman*, 63 N. Y. 582; *Galway* v. *El. R. R. Co.*, 128 N. Y. 132.) A railroad corporation having no legislative authority to build an elevated railroad structure in a city street will be enjoined from maintaining or operating it, at the suit of an abutting owner. (*Arnold* v. *H. R. R. R. Co.*, 55 N. Y. 661; *Galway* v. *E. R. R. Co.*, 128 N. Y. 134; *Aynsley* v. *Glover*, L. R. [18 Eq.] 544; *Irvine* v. *A. A. R. R. Co.*, 10 App. Div. 560.) The plaintiff has been guilty of no laches, certainly no laches which deprive her of the right to an injunction absolute. (*Pine* v. *City of New York*, 185 U. S. 93; *Galway* v. *El. R. R. Co.*, 128 N. Y. 132; *Brush* v. *El. R. R. Co.*, 26 Abb,

[N. C.] 73; *Story* v. *El. R. R. Co.*, 90 N. Y. 122; *Powers* v. *El. R. R. Co.*, 120 N. Y. 178; *S. S. Co.* v. *R. R. Co.*, 67 Hun, 153; *P. R. R. Co.* v. *M. P. R. R. Co.*, 111 U. S. 506; *I. G. T. R. R. Co.* v. *Wade*, 140 U. S. 165.) Public convenience cannot override the plaintiff's rights and is not a matter for consideration on this appeal, but if it is to be considered the facts show that the granting of an injunction would subserve and not subvert public interest. (*Davis* v. *Mayor, etc.*, 14 N. Y. 506.) The judgment below cannot be supported by the contention that the plaintiff's damages are slight, and the damage to the defendants resulting from an injunction would be great. (*Ackerman* v. *True*, 175 N. Y. 353; *Wakeman* v. *Wilbur*, 147 N. Y. 657.)

*Julien T. Davies, J. Osgood Nichols* and *Charles A. Gardiner* for respondent. The equitable relief granted to the plaintiff was in accordance with well-recognized principles of equity and an award of mandatory relief would have been inequitable and wholly without warrant in law or in fact. (*New York City* v. *Pine*, 185 U. S. 93; *Penrhyn Slate Co.* v. *G. El. Co.*, 181 N. Y. 80; *Auchincloss* v. *M. Ry. Co.*, 69 App. Div. 74; *A. B. N. Co.* v. *El. R. R. Co.*, 129 N. Y. 252.) The court below had jurisdiction to grant alternative relief. (*Smith* v. *Clay*, 3 Birr. 639; *P. S. Co.* v. *G. El. Co.*, 181 N. Y. 80; *Atty.-Gen.* v. *Delaware Co.*, 27 N. J. Eq. 1; *Atty.-Gen.* v. *N. Y. & L. B. R. R. Co.*, 24 N. J. Eq. 49; *Amerman* v. *Deane*, 132 N. Y. 355; *McSorley* v. *Gomprecht*, 30 Abb. [N. C.] 412; *Crocker* v. *M. L. Ins. Co.*, 61 App. Div. 226; *Riederman* v. *M. M. El. L. Co.*, 56 App. Div. 23; *Bates* v. *Holbrook*, 171 N. Y. 460; *Kessler* v. *Ensley*, 141 Fed. Rep. 169.)

EDWARD T. BARTLETT, J.   The Special Term awarded to the plaintiff, an owner of property abutting upon the Ninth Avenue line of defendant's elevated railway, in the city of New York, a money judgment and an injunction against the maintenance or in any way using the center or third track

upon the elevated railroad structure in front of the plaintiff's premises, described in the complaint, and known as No. 461 Ninth avenue, between 35th and 36th streets, except to remove the same, and from operating trains of cars thereon, on and after sixty days from entry of judgment and due service of a copy of the judgment and notice of entry thereof, with the usual alternative provision that if within the time limited the defendant should pay to plaintiff the sum of $1,200, for the conveyance of the easements appropriated for the use of the center or third track, then the said injunction should not operate. This appeal is taken by the plaintiff from that part of the judgment which provides for the avoidance of the injunction by the payment of the damages awarded. The record consists of the judgment-roll, no evidence being printed in the case.

The Appellate Division having determined by unanimous decision that there is evidence supporting, or tending to sustain, the findings of fact, they are conclusive here.

The manner in which this case is now presented is unusual. The legality of the defendant's construction and operation of the center or third track is not before us. It is conceded and found that the defendant's erection of that track in 1894 was without legislative authority or municipal consent. As was well observed by the learned judge writing the opinion of the Appellate Division, that if certain findings were considered alone, it would follow that a mandatory injunction should issue compelling the defendant to remove the center or third track from in front of the plaintiff's premises. There are, however, additional findings which influenced the Supreme Court, sitting in equity, to exercise its discretionary power and refuse the issuance of a mandatory injunction.

The plaintiff's position briefly stated is, that there are no findings which justify the conclusion reached by the Appellate Division, and that it is the absolute right of the plaintiff to compel the defendant to remove the center or third track. It thus appears that the important question for our consideration is whether the Appellate Division properly exercised its discretion in view of the facts as found.

It appears from the findings that the defendant, in good faith and relying upon the authority of certain acts of the legislature, constructed the third track. These findings are the twenty-second, twenty-third, twenty-fifth and twenty-sixth, quoted at the head of this opinion.

The twenty-second finding refers to certain rights, privileges and franchises granted to the defendant's predecessor company, under chapter 489 of the Laws of 1867, and acts amendatory thereof. The act of 1867 was amended by chapter 595 of the Laws of 1875. By section four of that act certain rights and franchises were conferred upon the New York Elevated Railroad Company, defendant's predecessor, and among others the following: "And the location of the lines or routes not specifically located by law, and the position and construction of the tracks, sidetracks, turnouts, stations and other structures which said company is or may be authorized by law to construct, may be such as said company may adopt and the said commissioners approve."

The twenty-third finding is to the effect that in November, 1867, the commissioners of the New York Elevated Railroad Company approved a plan of additional track, which provided for four tracks in front of plaintiff's premises, one of which was a switch, crossover or connecting track, and three of said tracks were actually constructed and used prior to the year 1880.

The twenty-fifth finding states, in substance, that in July, 1894, a third track was constructed in front of plaintiff's premises in addition to the structure as it existed prior thereto, the construction of which had been, in the month of December, 1893, duly authorized by said commissioners in so far as they had power so to do, and was constructed under color of such authority.

The twenty-sixth finding, in substance, is that the plaintiff had knowledge that this switch, siding or third track was being constructed and has ever since been familiar with its use and effect.

We are of opinion that the trial court and the Appellate

Division were justified in reaching the conclusion, in view of the findings just referred to, that this is not a case of wanton trespass or the arbitrary creation of a nuisance in a public highway; but that it sufficiently appears, as a matter of fact, that the defendant acted in good faith. It is true that the Appellate Division of the first department, in *Auchincloss* v. *Metropolitan El. Railway Company* (69 App. Div. 63) decided at February term, 1902, held that the commissioners, under the early acts already referred to, were not vested with the constitutional power to authorize a third track along Ninth avenue. The good faith of the defendant, however, does not depend upon what the ultimate decision of the court was in regard to the powers of the commissioners, but rather upon the interpretation thereof at the time the defendant acted in the premises.

There are other and weighty findings of fact to be considered that justified the conclusion reached by the Appellate Division without regard to defendant's good faith in laying the third track. Certain rights of the public have intervened during the years that have elapsed since the third track was used for the running of express trains. Findings twenty-eighth, twenty-ninth and thirty-first are, in substance, that the third track is a great public utility and constitutes a great public benefit; that the injury, if any, suffered by the plaintiff is small compared with the injury and inconvenience which would result to the defendant and to the public if the defendant is compelled to remove the same; that if the third track should be removed, the defendant's train service would thereby be seriously impaired; that by the removal of the third track the danger incident to the operation of trains on defendant's railway would thereby be increased.

These are considerations which appeal strongly to a court of equity, and their force is in no wise abated by the fact that the plaintiff delayed her action, being in doubt as to the law governing the situation. This action was begun June 21st, 1902, the *Auchincloss Case* (*supra*) having been decided in February, 1902, declaring the power of the commissioners,

upon which the defendant had relied, was derived from an unconstitutional statute. At that time the defendant had been running trains upon its third track for about eight years.

It is a familiar rule that the time at which a party appeals to a court of equity for relief affects largely the character of the relief which will be granted. The principle has frequently been applied in the decisions of this court and the Supreme Court of the United States.

In *Trustees of Columbia College* v. *Thacher* (87 N. Y. 311) the plaintiff sought to enforce a covenant restricting the character of buildings in a certain locality. It appearing that after the lapse of time the neighborhood had so changed in character as to defeat the object sought to be attained by the covenant, it was held that the enforcement thereof was inequitable and oppressive upon the defendant and should not be decreed. The same principle is laid down in *McClure* v. *Leaycraft* (183 N. Y. 36). This general doctrine was fully examined in the cases of *New York City* v. *Pine* (185 U. S. 93) and in *Penrhyn Slate Company* v. *Granville Electric Light & Power Company* (181 N. Y. 80). In the last two cases many authorities are cited.

The trial court found (findings 34 and 35), in substance, that any damages suffered by the plaintiff in the premises can be adequately compensated by the payment of such amount as the court should find; that the payment to the plaintiff of just compensation would be a remedy for her injuries as adequate as would be the removal of the third track.

There can be no doubt that the existence of this third track for so many years upon which express trains have been run does constitute a great public benefit. The transportation of passengers back and forth upon the narrow island of Manhattan has been for years a problem growing more and more difficult of solution, and for a court of equity to compel the removal of, or the dangerous interference with, the third track, subjecting the public not only to inconvenience but danger, would not be a wise exercise of its discretionary

power.    A court of equity is not bound to issue an injunction when it will produce a great public or private mischief, merely for the purpose of protecting a technical or unsubstantial right. (*Gray* v. *Manhattan Railway Co.*, 128 N. Y. 499.)

We do not mean to intimate that the premises in question have not been damaged in the easements of light, air and access by the construction of this third track; but, in view of public interests and the long delay in instituting this action, plaintiff is properly compelled to abide by the judgment of the court of equity to which she has resorted, or bring her action for damages in a court of law.

There is one other consideration urged by the defendant against the issuing of a mandatory injunction which is found in finding twenty-seventh.    It is undoubtedly the fact that the defendant having constructed its third track in front of the plaintiff's premises without legislative authority or municipal consent, is in no condition to institute condemnation proceedings to acquire property rights; but, nevertheless, it may be regarded as a corporation acting in good faith and serving the public for a long series of years without interference.    It, therefore, follows that the defendant was justified in acquiring easements in aid of the construction of its third track by entering into contracts with abutting owners.

In the twenty-seventh finding it appears that the defendant has expended since the year 1894 over $800,000 in acquiring the easements of abutting owners along the line of the third track, and has secured the consent of the owners of property representing 26,927 lineal feet along Ninth and Columbus avenues out of a total of 39,514 feet.    These facts were urged upon the court below and doubtless had some influence in the decision reached.

We have not deemed it necessary to examine the many questions and cases discussed in the voluminous briefs of counsel, as we have reached the conclusion that the learned Appellate Division wisely exercised its discretion in the premises.

The judgment appealed from should be affirmed, with costs. The parties hereto are hereby allowed thirty days from the time a copy of this judgment is duly served upon the plaintiff, or her attorney, in which to carry out the provisions of the judgments of the trial court and the Appellate Division.

CULLEN, Ch. J., GRAY, O'BRIEN, WERNER, HISCOCK and CHASE, JJ., concur.

Judgment affirmed.