# Gailey et al. *v.* Wilkinsburg Real Estate Trust Co., Appellant.

*Road law—Vacation of street—Streets and alleys—Dedication by plan of lots—Deeds—Way of necessity—Impairing obligation of contract—Due process of law—Constitutional law—Nonuser—Estoppel—Building—Damages for vacating easement—Adverse claim in land—Expending money—Conduct of parties.*

1. Where the owner of a tract of land in a municipality lays out a plan of lots and sells them with reference to its streets and alleys, each lot owner acquires by contract an implied covenant that the streets and alleys appearing on the plan shall be forever open to the use of the public as dedicated highways.

2. When streets have been dedicated and lots sold according to a plan, ordinarily neither the grantor nor the municipality can extinguish the lot owner's easement.

3. Where lots have been sold according to streets projected by a municipality the lot owner's easement does not rise as high as the easement acquired when lots are sold according to the streets laid out by the owner.

4. When a sale is from a plan of lots laid out by the owner, before adoption by the municipality, or before the land was incorporated as part of the municipality, the contractual right existing in all lot owners continues to live, regardless of any action by municipal authorities to change them.

5. But if the right accrues through sale of lots after the municipality has adopted the highways, or when an owner sells with reference to streets and alleys projected by the municipality, the easement is limited to a way of necessity, with all its impediments.

6. Where an owner lays out streets and alleys on land within the lines of an already incorporated borough, such owners and those who purchase from him know that the borough, under its general powers from the State, has the exclusive authority to adopt, relocate, vacate, and improve alleys within its lines.

7. Where the borough in such case vacates a street, compensation must be paid or secured to the owners.

8. A municipality may, by its acts and ordinances, evidence a purpose not only to abolish a thoroughfare as a public one, but to include as well the extinguishment of the easement of passage in lot owners, but compensation must be allowed if the owner of the easement is injured.

9. The obligation of a contract is not impaired when the subject-matter is appropriated for public use. If compensation is provided through due process of law all constitutional objections are met.

10. The location of an easement may be changed and the acceptance of lot owners may be evidenced by occupation and use of the new way.

11. Mere nonuser of an easement, without more, will not affect the rights of the easement holders under a deed.

12. But where there are notorious physical facts of a hostile character to the notice in the deed, continuing for a long period of years, an estoppel may arise against the holders of the easement.

13. One may be advised by deed of an adverse claim in land, but he may believe such claim in fact does not exist, and, though he may not plead lack of knowledge of its existence when asserted, if the one in possession of land acts from an honest conviction that his legal position is sound, and this belief is based in large part on his adversary's conduct which leads him to the opinion his title is well founded, and on the faith of which he expends large sums of money, the duty of the rival claimant to assert his title promptly is imperative.

14. Where streets are laid out by a plan of lots in an incorporated borough, and subsequently the borough vacates one of the streets and relocates it in a place not substantially differing from the old location, and the lot owners used the new location for many years as a street, and for sixteen years made no objection to its use by the grantees under a deed executed after the relocation from the original owner of the lots, and referring thereto, their acts show an acceptance of the new way in lieu of the old one, and they are estopped from asserting a right to remove the building erected on the old location.

*Ejectment—Practice, C. P.—Judgment on pleadings—Act of June 7, 1915, P. L. 887.*

15. In ejectment, where plaintiffs move for judgment on the pleadings, the court has authority, under the Act of June 7, 1915, P. L. 887, to proceed on the pleadings.

Argued March 25, 1925. Appeal, No. 76, March T., 1925, by defendant, from judgment of C. P. Allegheny Co., July T., 1924, No. 1353, for plaintiffs on pleadings in action to quiet title in case of Alvey F. Gailey et al. v. Wilkinsburg Real Estate & Trust Co. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Ejectment to quiet title under Act of June 10, 1893, P. L. 416. Before MACFARLANE, J.

From the record it appeared that, after an issue was framed, plaintiffs filed a declaration and defendant filed an affidavit of defense and entered a plea of "not guilty." Plaintiffs then moved for judgment on the pleadings. Other facts appear by the opinion of the Supreme Court.

Judgment for plaintiffs on the pleadings. Defendant appealed.

*Error assigned* was, inter alia, judgment, quoting record.

*T. S. Brown,* of *T. S. & O. W. Brown,* with him *Stewart & Stewart,* for appellant.—A municipality has the

power to locate, vacate and regulate the streets wholly within its limits, and one laying out a plan of lots within the limits of a borough does so with knowledge of the fact that the municipality may adopt or reject or relocate streets within its limits.

The street in question was not, in fact, abolished, but was merely relocated, in a position so near the old location that it serves all the purposes of a highway which were served by it in the old location: Chambersburg S. Mfg. Co. v. R. R., 240 Pa. 519; Curtis v. Whitney, 13 Wall. 68.

The conduct of appellees in the premises bars the assertion of their claims against the appellant: Strimpfler v. Roberts, 18 Pa. 283; McClure v. Land Co., 263 Pa. 368; Raritan Water Power Co. v. Veghte, 21 N. J. Eq. 463; Hayes' App., 113 Pa. 380; Engel's Est., 180 Pa. 215; Smith v. Rowland, 243 Pa. 306; Grey v. Ry., 1 Grant 412; Hill v. Epley, 31 Pa. 331; Logan v. Gardner, 136 Pa. 588; Livengood v. Stauffer, 31 Pa. Superior Ct. 495.

*Robert F. Barnett,* with him *Drayton Heard* and *Sterrett & Acheson,* for appellees.—Appellees' rights could not be transferred to the new street by the borough.

Appellees acquired individual contractual property rights in Sanders Street independent of the rights which the public may later have acquired: Baltimore & Ohio R. R. v. Wilson Snyder M. Co., 279 Pa. 219; O'Donnell v. Pittsburgh, 234 Pa. 401, 410-411; Chambersburg S. Mfg. Co. v. Cumberland Valley R. R. Co., 240 Pa. 519; Stivason v. Serene & Serene, 80 Pa. Superior Ct. 1; Shetter v. Welzel, 242 Pa. 355.

Nonuser does not affect appellees' rights: B. & O. R. R. v. Mfg. Co., 279 Pa. 219.

There has been no abandonment: Putnam v. Tyler, 117 Pa. 570.

Appellees' silence was natural: Garvey v. Refractories Co., 213 Pa. 177.

OPINION BY MR. JUSTICE KEPHART, April 24, 1925:

George W. Guthrie, trustee, laid out a plan of lots with streets and alleys on land within the corporate limits of Edgewood. The plan was not accepted by the borough by any formal act, though by subsequent conduct it recognized Sanders, the street in controversy, between Savannah and Mifflin avenues, as a street. In 1907 the school district, by an arrangement with the borough, moved Sanders Street a short distance north of its old location to land dedicated by the school district, reducing its width from fifty to thirty feet, so that the north line of the old street and the south line of the new were twenty-two feet apart. The borough then vacated Sanders Street. Prior to the vacation, appellees, or their predecessors, had purchased lots in this plan, and, because of the use and occupation of the old location by appellant as sole owner, this litigation arises; the facts will be more fully developed as we proceed.

Several questions are presented, the first being, where an owner lays out a plan of lots with highways, may a municipality subsequently appropriate the lot owner's easement by vacating the street, leaving the lot owner to compensation in damages if his land is injured by the taking?

Where the owner of a tract of land in a municipality lays out a plan of lots and sells them with reference to its streets and alleys, each lot owner acquires by contract an implied covenant that the streets and alleys appearing on the plan shall be forever open to the use of the public as dedicated highways: O'Donnell v. Pittsburgh, 234 Pa. 401; Tesson v. Porter Co., 238 Pa. 504, 510, and cases cited. When streets have been dedicated and lots sold according to a plan, the grantor cannot revoke the dedication without the consent of all lot owners. Ordinarily the municipality cannot extinguish the lot owner's easement existing by private contract: Chambersburg Shoe Mfg. Co. v. C. V. R. R. Co., 240 Pa. 519, 522, 525; B. & O. R. R. Co. v. Wilson Snyder Mfg. Co.,

279 Pa. 219, 224; O'Donnell v. Porter Co., 238 Pa. 495, 501; In re Melon Street, 182 Pa. 397, 403. In Hawkes v. Philadelphia, 264 Pa. 346, we held that where the owner adopts for the sale of lots streets and alleys projected by a municipality, the grantee acquires by implication an easement over those streets, equal only to a way of necessity, unless the grant negatives such implication. Such adoption is not a dedication, nor a contract giving rise to a covenant that the street shall be opened. If the right to open is subsequently abandoned by the municipality the way is limited to one reasonably necessary to the enjoyment of the lot sold; if another is open, the easement is lost of necessity.

The distinction in the creation of the two rights is narrow. When a sale is from a plan of lots laid out by the owner, before adoption by the municipality, or before the land was incorporated as part of the municipality, the contractual right existing in all lot owners to all highways on the plan lives regardless of any action by municipal authorities to abolish or change them. On the other hand, if the right accrues through sale of lots after the municipality has adopted the highways, or when an owner sells with reference to streets and alleys projected by the municipality, the easement is limited to a way of necessity, with all its impediments. We held, in Henderson v. Young, 260 Pa. 334, a case similar in effect to the Hawkes Case, that where there was a vacation of a street and a subsequent occupation of the vacated part, with buildings, lawns and fences, and there were other streets which could be used for ingress and egress and still other streets with which connection could be made, such occupation of the plotted street did not interfere with any right in the complaining lot owner. In the present case, no one of these appellees abuts on the vacated street, and all have precisely the same means of access to and from their premises as they had before vacation.

The theory on which the rule in the Hawkes Case rests is that the creation of the highway is the act of the municipality, to which the owner was not a party, while in the former an implied covenant arises through contract. But the contract feature, and implied covenant, are as strong in the one case as in the other; in both the owner has done identical things to create an easement. In both he executes a deed with reference to streets, in the one case made by himself and in the other adopting the lines made by the municipality. The purchaser's easement in both cases stands on contract. However, too little consideration has been given to the authority vested in the governing powers of a municipality and the nature of the easement.

When Guthrie laid out his streets and alleys, the property was within the lines of an already incorporated borough. The owner of the lots, as well as those who purchased from him, knew the borough, by its grant of power from the State and subject to its regulation, was the exclusive authority to adopt, relocate, vacate and improve streets and alleys within her lines. The owner divided his lots with this idea in view. All purchasers bought with the understanding that, under the Act of 1851, the streets might be vacated and abandoned, with others substituted, or might be vacated altogether. Every such contract, whether between the State and an individual or between individuals only, is subject to this general law. There enters into every engagement the unwritten condition that it is subordinate to the right of appropriation to a public use: The West River Bridge Co. v. Dix, 6 How. 507, 532-3, 538, 542; Long Island Water Supply Co. v. Brooklyn, 166 U. S. 685, 689; City of Cincinnati v. Louisville & Nashville R. R. Co., 223 U. S. 390, 400. Where lots are laid out, with streets plotted thereon, when they become highways they are subject to the paramount control of the borough, which may change or vacate them, in the exercise of its right of eminent domain, thereby relieving the borough of the

duty to maintain and police the old location, and, in addition, release it from the servitude of passage in the lot owners. This, however, can be done, under the Constitution, only when compensation is paid or secured to the owners. An easement may be condemned, and, if the owner's land is injured, compensation must be allowed: Chambersburg Shoe Mfg. Co. v. Cumberland Valley R. R. Co., 240 Pa. 519, 526; Hedrick v. Harrisburg, 278 Pa. 274. A municipality may, by its acts and ordinances, evidence a purpose not only to abolish the thoroughfare as a public one, but to include as well the extinguishment of the easement of passage in lot owners. As a matter of public policy, that it should have this right is imperative. A municipality should not be harassed or embarassed in its management and control of a city by leaving streets, ostensibly public ways because of this living easement, in the hands of persons who are in no way responsible for acts occurring thereon, without adequate police protection,—places wherein acts may be committed to the great detriment of the public good and to the annoyance of the peace-preserving powers. Vacation under such circumstances is followed by the remedy pointed out by law where compensation for the loss sustained can be allowed: Chambersburg Shoe Mfg. Co. v. Cumberland Valley R. R. Co., supra, 527; Hedrick v. Harrisburg, supra. The obligation of a contract is not impaired when its subject-matter is appropriated for public use. Taking rights arising from a contract is not an impairment of its obligations, and where compensation is provided through due process of law all constitutional objections to such taking are met: Long Island Water Supply Co. v. Brooklyn, 166 U. S. 685, 689; New Orleans Gas Co. v. Louisiana Light Co., 115 U. S. 650, 673; Offield v. N. Y., N. H. & H. R. R. Co., 203 U. S. 372, 378. The easement right is merely one of passage. Standing alone, it possessed none of the attributes of a public highway, though it may be for the use of all lot owners and the public. When the city assumes control of

it there is no right in the easement owners to preserve it in its original form. The municipality may change its grade and surface conditions  Through police regulations, restrictions may be imposed on the manner of its use, for illustration, causing traffic to pass over it in one direction, forbidding its use by certain vehicles, or establishing a period of time within which it may be used by others. A narrow highway may be widened or narrowed, street straightened, and the vacated parts totally abandoned. These acts impair the land owner's easement by modifying or changing it, but are not such interferences with the right of passage as will found a complaint against the municipality. Through the dedication, relocation, vacation and the subsequent acts in reliance thereon, more fully hereafter detailed, the borough, in vacating the old way, intended to extinguish the easement, leaving the owners to the usual redress in damages for injuries, if any, sustained to their lands.

The second question is, Did the vacation of the old street and its dedication, relocation and acceptance in a place not substantially differing from the old location, transfer the lot owner's right of passage or easement to the new street?

The facts in this case not only evidence the borough's intent to extinguish the lot owner's easement, but they also evidence a change of way to another location accepted by the lot owners. The school district negotiated with Guthrie for a purchase of land not embraced in his plan; to enlarge the continuous grant for school purposes, it was agreed between the borough, Guthrie and the school district that the school district should dedicate the present Sanders Street, between Savannah and Mifflin. This was accordingly done by giving a strip of ground twenty-five feet distant from the old street. A deed was made by Guthrie to the school district for the land within the lines of the old location, and the borough, by ordinance, accepted the new and vacated the old. Thereafter the school district exercised undisputed con-

trol of the ground in old Sanders Street; no lot owner for thirty-two years has attempted to use it, and, for sixteen years before suit, when there was every reason to assert their rights, no lot owner in the Guthrie plan, nor any other person, made any effort to use the street; during these sixteen years it was occupied and used by the grantees and their successors in the exercise of rights in every way hostile to any supposed claim of easement in the appellees. It has been stated by appellant that it was used as a ball park; it is admitted that it was occupied by electric light appliances. In all plans subsequently made, the new location was noted. Appellees have used the new location as a highway since its dedication by the school district and its adoption by the borough. The first assertion of a right in the old street was the notice given by the present plaintiffs in September, 1923. This was after the school board had sold the land to Hulem, and he and this defendant had spent thousands of dollars in the erection of houses on old Sanders Street, one house being completed and the others in process of construction.

When the new strip of ground was dedicated by the school district as owner, the street was changed; the old way was closed. The new location served every conceivable purpose of the former easement. The dedication owner could not close the new location without giving to the easement owners the old way or one equal in every respect: Hamilton v. White, 5 N. Y. 9. The lot owners of course were not bound to accept the change. Nor were they, until their rights were infringed, bound to do anything to signify their disapproval. But after this dedication, the old way was in the actual notorious occupation of others without protest; appellees used the new way, with the general public, for sixteen years; the combined effect of these acts show an acceptance of the new way in lieu of the old one: 19 C. J. 973.

The above conduct also presents strong ground on which to found estoppel. Appellees claim it cannot

avail because Guthrie's deed to the school district, as did the deed from Hulem, reserved to the lot owners whatever rights they might have in the old location. But the deed of the school district and of Hulem specifically referred to the vacation and relocation of this street. And while knowledge might have been procured from the deed that a claim might be outstanding, there were set up against this claim acts contrary to the existence of such rights. These were persisted in up to the day Hulem started to build, so that, while the notice in the deed might have protected the grantors, it did not relieve the easement owners of the duty to protest. Of course mere nonuser, without more, will not affect the rights of the easement holders: B. & O. R. R. Co. v. Wilson Snyder Mfg. Co., 279 Pa. 219, 224. And when both parties are aware of their rights, estoppel cannot arise: Garvey v. Harbison-Walker Refractories Co., 213 Pa. 177, 182. But in the present case appellant's knowledge was not limited solely to the deeds. There were notorious physical facts of a continuing character hostile to the notice in the deed. These, with the grant of a new street in place of the old one, added to appellees' long delay, give ground for estoppel.

One may be advised by deed of an adverse claim in land, but he may believe such claim in fact does not exist, and, though he may not plead lack of knowledge of its existence when asserted, if the one in possession of land acts from an honest conviction that his legal position is sound, and this belief is based in large part on his adversary's conduct, which leads him to the opinion his title is well founded, and on the faith of which he expends large sums of money, the duty of the rival claimant to assert his title promptly is imperative. Though the recitals in the deed are as here admitted, nevertheless, under the circumstances indicated, appellees cannot sleep on their rights for sixteen years, then, after appellant has moved to his damage, assert their pretentions; they will be held in equity strictly to the principles which

govern the law of estoppel. Under the judgment of the court below this property must now be destroyed or this appellant must pay a large sum of money to continue its work. Even if it would settle with these appellees, there would still be other lot owners with whom to settle. These streets are blocked at both ends by the improvement of Savannah and Mifflin avenues. What appellees hope to get is a mere naked right as against the countervailing equities of this appellant. That right sinks into the shadows, and ought not to be discernible by a court of equity. The doctrine of laches applies in full force: Knoth v. Manhattan Ry. Co., 187 N. Y. 243, 79 N. E. 1015; Keichline v. Hornung, 189 Pa. 560; Redmond v. Excelsior Saving Fund & Loan Association, 194 Pa. 643; Livengood v. Stauffer, 31 Pa. Superior Ct. 495; Smith v. Rowland, 243 Pa. 306; Smith v. Clay, 3 Bro. C. C. 646 note, 29 Eng. Reprint 743; Hayes' App., 113 Pa. 380, 386; Bowman v. Wathen, 1 How. 189; Slemmer's App., 58 Pa. 168, 177.

Under the practice in ejectment (Glenn v. Stewart, 265 Pa. 208, and Shaw v. Cornman, 271 Pa. 260), the court below had authority to proceed on the pleadings.

The judgment of the court below as entered is reversed, the record is remitted with directions to enter judgment for defendant without costs.